UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COURTNEY RICHMOND,<br><br>Defendant. | 4:24-CR-40139-KES<br><br>ORDER DENYING MOTIONS TO DISMISS AND DENYING MOTION FOR RETURN OF PROPERTY |

Defendant, Courtney Richmond, filed two pro se motions to dismiss the indictment that is pending against him, arguing that the United States has committed multiple constitutional violations and engaged in "prosecutorial misconduct that render[s] this case fundamentally flawed and legally unsustainable." Docket 96 at 1; *see also* Docket 100. Additionally, Richmond asserts that the United States tampered with video evidence. Docket 100 at 1. Richmond also filed a pro se motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g). Docket 106. The United States responded to all three motions, *see* Dockets 114, 115, and Richmond filed a reply brief, Docket 120. The court issues the following order.

## ALLEGED FACTS

For the purposes of this motion to dismiss, the court considers the following evidence, which was taken from the record of the suppression hearing that was held in this matter on March 21, 2025. *See* Docket 40. But the court

reaffirms that Richmond remains innocent of the charges against him, and the court takes no position on the question of his guilt or the veracity of any factual allegation made by the United States. *See Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary.") (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

In the fall of 2023, law enforcement discovered that Richmond's former co-defendant, Anthony Nguyen, was a supplier of methamphetamine in Sioux Falls, South Dakota. Docket 40 at 10. On October 3, 2023, law enforcement used a criminal informant (CI) to stage a controlled purchase of methamphetamine from Nguyen in the Menards parking lot. *Id.* at 11-12. Surveilling nearby, investigators observed Nguyen arrive at Menards, while seated in the passenger seat of a gold GMC Yukon SUV. *Id.* at 12-13. Nguyen exited the Yukon, handed drugs to the CI, and stated that he needed to leave because "we" have other stops to make. *Id.* at 13, 15. Law enforcement later identified the driver of the gold Yukon as Courtney Richmond and learned that the Yukon was registered in his name. *Id.* at 14. Law enforcement did not take photographs or record video of the controlled purchase. *See* Docket 65 at 4.

After further investigation, on December 13, 2023, law enforcement obtained two state-issued search warrants. Docket 40 at 22. One warrant authorized the search of Richmond's person, Sioux Falls residence, and three of his vehicles. *Id.* at 24. The other warrant authorized the search of Richmond's residence in Brandon, South Dakota. *Id.* at 22-24. Because the

2

officers were concerned that Richmond had firearms in his residences, they decided to execute the warrants only after ensuring that Richmond was not present at his Sioux Falls home. *Id.* at 27, 81. As part of the operation, South Dakota Highway Patrol (SDHP) was tasked with initiating a traffic stop of Richmond shortly after Richmond left his house. *Id.* at 27, 80. The Drug Enforcement Agency (DEA) instructed the troopers to stop Richmond, take him into custody, and bring Richmond to the DEA office where the agents would speak with him. *Id.* at 89.

On December 14, 2023, once law enforcement observed Richmond leave his Sioux Falls home, they executed the search warrant.[1] *Id.* at 118-19. Shortly thereafter, the SDHP pulled Richmond over while he was driving his GMC Yukon. *Id.* at 28, 82. As planned, and before searching Richmond's Yukon, the SDHP troopers handcuffed Richmond, searched his person, placed him in the back of a squad car, and transported him to the DEA office while another officer followed in Richmond's Yukon. *Id.* at 83, 87, 128. At no point during the traffic stop or during Richmond's transport to the DEA office did the troopers advise Richmond of his *Miranda* warnings or provide him with a copy of the search warrants. *Id.* at 87-88. At the DEA office, Richmond invoked his right to an attorney. *Id.* at 124. The attempted interview was then terminated, and Richmond was booked into the Minnehaha County jail. *Id.*

---

[1] The agencies involved in executing the search warrants were (1) Sioux Falls DEA office, (2) Sioux City DEA office, (3) Brooking Police Department, (4) South Dakota Highway Patrol, and (5) South Dakota DCI. *See* Docket 40 at 119-120.

The search of Richmond's Sioux Falls home discovered cash, a Glock 26 handgun, a digital scale with white residue on it, 229.9 grams of methamphetamine, and baggies with drug residue that tested positive for meth. *Id.* at 28. A search of Richmond's Yukon revealed a loaded black handgun in the center console of the vehicle and 77 grams of meth in a backpack on the back seat. *Id.* at 56, 125. A cell phone was also seized from Richmond's person during the search. *See* Docket 115 at 1 (stating that law enforcement also "seized a cell phone from [Richmond] pursuant to the warrant"); *see also* Docket 39 at 12-13.

On January 4, 2024, a federal grand jury indicted Richmond and his former co-defendant Anthony Nguyen on one count of conspiracy to distribute a controlled substance in case number 4:24-CR-40005-KES.[2] CR Docket 1. A warrant was issued for Richmond's arrest that same day. CR Docket 4. Because Richmond was in state custody at the Minnehaha County jail in Sioux Falls, South Dakota, when the indictment was filed, the United States applied for a writ of habeas corpus ad prosequendum on January 5, 2024. *See* CR Docket 5. That same day, the court denied the application for the writ as moot because Richmond was no longer in state custody, and Richmond was arrested based on the arrest warrant. *See* CR Docket 7; CR Docket 19. During his

---

[2] Documents from Richmond's previously dismissed criminal case, *United States v. Richmond*, 4:24-CR-40005-KES, will be cited using the case's assigned docket number preceded by "CR." The court will cite to documents from the current case using the case's assigned docket number.

4

arraignment on January 9, 2024, Richmond was advised of the charge against him. *See* CR Docket 12.

In October 2024, Richmond moved to dismiss the indictment in 4:24-CR-40005-KES, arguing that he was not given a copy of the indictment at his arraignment. CR Docket 75. The court denied Richmond's motion, finding he confirmed to the court during the arraignment hearing that he had a copy, and the charge was read aloud to Richmond during the hearing. *See* CR Docket 101 at 5. Meanwhile, on November 14, 2024, the grand jury indicted Richmond on a new indictment charging him with possession of a controlled substance with intent to distribute, conspiracy to distribute a controlled substance, and possession of a firearm by a prohibited person. Docket 1. In December 2024, the United States moved to dismiss the indictment against Richmond in case file 4:24-CR-40005-KES, explaining that "the interests of justice will be best served by dismissing said Indictment due to the ongoing prosecution in CR 24-40139." CR Docket 103. The court granted the United States's motion to dismiss. CR Docket 104.

In the present case, Richmond previously moved to suppress certain statements that he made to law enforcement and evidence seized from his person, car, and house. Docket 15. The court granted Richmond's motion in part due to Richmond not being advised of his *Miranda* rights and suppressed any statements made by Richmond at the DEA office. *See* Docket 67 at 7. Otherwise, the remainder of Richmond's suppression motion was denied. *See id.*

5

Richmond previously filed a motion to dismiss the indictment and contended that (1) "the government improperly switched to conspiracy charges after the original charges failed"; (2) "the government committed *Brady* violations by failing to disclose the absence of surveillance evidence"; (3) Richmond's "Fourth Amendment rights were violated by the warrantless arrest"; and (4) "the gun charges should be dismissed because the defendant's right to possess firearms has been restored under South Dakota law." Docket 56 at 2-4 (emphasis removed). The court rejected Richmond's arguments and denied the motion to dismiss. *See* Docket 68.

Richmond now moves to dismiss the indictment against him again, alleging that (1) the United States violated his due process rights because he "was held for 5 days after the state dismissed all charges"; (2) the United States has committed a "massive federal speedy trial act violation"; (3) there is insufficient evidence to sustain a conviction; (4) "[t]his prosecution is retaliation for [his] federal civil rights lawsuit"; (5) this court lacks jurisdiction; and (6) the United States, law enforcement, defense counsel, and the court engaged in systematic video tampering. Docket 96 at 2-4 (emphasis removed); Docket 100. Richmond also moves for an order requiring the United States to return his cell phone. Docket 106. The United States opposes Richmond's motions.[3] Docket 114; Docket 115. The court addresses each motion in turn.

---

[3] The United States first argues that Richmond's pro se motions to dismiss both fail to comply with Local Rule 47.10, which requires that every motion raising a question of law to be accompanied by a "brief containing the movant's legal arguments, the authorities in support thereof, and the Federal Rule of Criminal Procedure on which the movant relies." Docket 114 at 1 (quoting

**DISCUSSION**

I.    **Motions to Dismiss**

    A.    **Prearraignment Delay and the Speedy Trial Act**

Richmond first argues that his due process rights were violated because he was illegally detained for five days after the State dismissed the charges against him. Docket 96 at 2. Richmond states that "there is no discretion in this matter under law" because "the county had no legal authority to continue holding" him. *Id.* Richmond also raises a Speedy Trial Act violation and states that "federal authorities held [him] for 26 days before providing notice of indictment."[4] *Id.* Richmond states that "[f]ederal law requires indictment notice

---

D.S.D. LR 47.10). The United States asserts that "Richmond's motions contain conclusory statements with blanket references to broad statutes or principles but" do not contain "a coherent argument supported by cited legal authority." *Id.* In response, Richmond states that a pro se litigants' claim must be liberally construed. Docket 120 at 1. Although Richmond is correct that submissions of a pro se litigant must be construed liberally, *see Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020), "pro se litigants [still] must comply with court rules and directives," *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005). Indeed, the court has the inherent authority to deny Richmond's pro se motions based solely on his failure to comply with the local rules. *See Reasonover v. St. Louis Cty.*, 447 F.3d 569, 579 (8th Cir. 2006) (holding that "[d]istrict courts have broad discretion to set filing deadlines and enforce local rules"); *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000) ("A pro se litigant is bound by the litigation rules as is a lawyer."). But because the United States does not request denial on that basis, the court will address Richmond's claims on the merits.

[4] The court presumes that Richmond's argument pertains to his arrest and detention under the indictment in case number 4:24-CR-40005-KES, because that is the only instance in which Richmond has been held in pretrial custody. *See* CR Docket 4; CR Docket 19. To the extent Richmond argues that he was detained for 26 days before receiving notice of the indictment in the present case, 4:24-CR-40139-KES, the record reflects that he was indicted on November 14, 2024, and arraigned on November 21, 2024. Docket 1; Docket 7. But the record makes clear that Richmond has not been in pretrial custody at

within 14 days maximum," and that the government "exceeded this limit by 12 days." *Id.* Due to these violations, Richmond states that the indictment should be dismissed.[5] *Id.*

In response, the United States contends that Richmond's argument fails for multiple reasons: (1) "Richmond has cited no legal for his argument that he was unlawfully detained for f[ive] days and that therefore the case should be dismissed"; (2) "Richmond has not alleged or offered evidence that his arrest, indictment, and detention in Minnehaha County [was] at the direction of federal officers"; and (3) "even if the [c]ourt finds an issue with the timing of Richmond's arraignment, Richmond's request for dismissal of charges is not a proper remedy." Docket 114 at 2-3.

Federal Rule of Criminal Procedure 5(a) requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a)(1)(A). "Rule 5(a) applies only to persons arrested and held under federal law[,]" unless "there is evidence indicating that the arrest and detention by the state official were at the request of federal authorities or for the purpose of assisting them."

---

any time since being indicted in this case, *see* Docket 8, and therefore his argument must apply to his arrest and detention based on the indictment in case number 4:24-CR-40005-KES.

[5] Richmond also briefly references 18 U.S.C. § 242, a statute that authorizes federal prosecution of individuals who, acting under color of law, willfully deprive others of rights protected under the Constitution or federal law. *See* 18 U.S.C. § 242; *United States v. Blakeney*, 876 F.3d 1126, 1132 (8th Cir. 2017). Because this is a criminal matter where Richmond is the defendant, his reference to 18 U.S.C. § 242 to bolster his argument is inapplicable.

*United States v. Cooke*, 853 F.3d 464, 470 (8th Cir. 2017) (internal quotation marks and citation omitted). The purpose of Rule 5(a) is to "frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual." *Id.* at 471. The proper remedy for a violation of Rule 5(a)(1)(A) is "suppression of evidence illegally obtained as a result of the violation[,]" not dismissal of an indictment. *Id.*

When Richmond was arrested on January 5, 2024, he was taken into federal custody on federal charges and was no longer in state custody. *See* CR Docket 7; CR Docket 19. As such, Richmond's arrest triggered Rule 5(a), and the issue is whether the five-day delay between his arrest and arraignment was "unnecessary" as proscribed under Rule 5(a). *See* Fed. R. Crim. P. 5(a)(1)(A). The court, however, need not decide whether such a delay was "unnecessary" under Rule 5(a) because, as the Eighth Circuit has explained, the Rule's purpose is to "frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual." *Cooke*, 853 F.3d at 471. Thus, the proper remedy for a violation of Rule 5(a)(1)(A) is "suppression of evidence illegally obtained as a result of the violation[,]" not dismissal of an indictment. *Id.* Richmond points to no such evidence, maintaining only that "[he] was held for [five] days after the state dismissed all charges[,]" which "constitutes unlawful imprisonment and violates due process." Docket 96 at 2 (emphasis

9

removed). Thus, even if Rule 5(a) was violated, Richmond has not identified any statements he made prior to his arraignment that should be suppressed.

In addition, Richmond's contention that he is entitled to dismissal of the charges under the Fifth Amendment's Due Process Clause cannot be reconciled with federal precedents. Such precedents consistently refer to the exclusion of evidence as the appropriate remedy for the violation of the prompt presentment rule, not dismissal of criminal charges.[6] And although the Supreme Court has held that dismissal of an indictment may be warranted where the prosecution has engaged in "outrageous" conduct, *United States v. Russell*, 411 U.S. 423, 431-32 (1973), the five-day prearrangement delay Richmond alleges here does not rise to such a level, *see id.* at 432 (holding that the outrageousness of such conduct must rise to the level of "violating that 'fundamental fairness' shocking to the universal sense of justice." (citation omitted)). Thus, Richmond's argument fails.

Finally, Richmond's argument that the Speedy Trial Act was violated is unavailing. The Act requires that "a federal criminal defendant must be

---

[6] *See Cooke*, 853 F.3d at 471 (8th Cir. 2017); *United States v. Chavez*, 705 F.3d 381, 385-86 (8th Cir. 2013); *see also United States v. Peeples*, 962 F.3d 677, 686 (2d Cir. 2020) (stating that the history of Rule 5(a) shows that the remedy for a violation of the Rule is the exclusion of evidence, not dismissal of a criminal case); *United States v. Bibb*, 194 F. App'x 619, 623 (11th Cir. 2006) (per curiam) ("[W]e have never recognized dismissal of the indictment as a proper remedy for a Rule 5 violation"); *United States v. Garcia-Echeverria*, 374 F.3d 440, 452 (6th Cir. 2004) (noting that the appropriate remedy for a Rule 5(a) violation is the exclusion of evidence and affirming the district court's denial of defendant's motion to dismiss on that basis); *United States v. Dyer*, 325 F.3d 464, 470 n.2 (3d Cir. 2003) (Rule 5(a) violation requires suppression of evidence, not dismissal of indictment).

brought to trial within seventy days of the filing of his indictment or his arraignment, *whichever is later.*" *United States v. Shepard*, 462 F.3d 847, 865 (8th Cir. 2006) (internal quotation marks omitted).

The record shows that Richmond was indicted in case number 4:24-CR-40005-KES on January 4, 2024, CR Docket 1, and was arraigned on January 9, 2024, *see* CR Docket 12. That makes it five days between Richmond's indictment and arraignment—not 26, as he suggests. *See* Docket 96 at 2. And contrary to Richmond's contention, the five-day period between Richmond's indictment and arraignment is not included in the Speedy Trial Act calculation. *See id.* Thus, no Speedy Trial Act violation occurred, and Richmond's argument fails.

### B.    Lack of Evidence

Richmond states that "the prosecution has presented zero evidence of the alleged crimes." *Id.* at 3 (emphasis removed). Richmond asserts that the United States has not presented any surveillance evidence, evidence from undercover operations, physical evidence, or witness testimony. *Id.* He further contends that the State's dismissal of all charges for lack of evidence demonstrates that the United States likewise lacks evidence of any drug sales. *See id.* As such, Richmond requests that his indictment be dismissed. *Id.* at 4.

In response, the United States explains that it presented some evidence "at the suppression hearing and is summarized in the magistrate judge's R[eport] and Recommendations and this [c]ourt[']s order adopting that R[&]R." Docket 114 at 5. Because Richmond was indicted by a grand jury, the United

States argues that "any question now of whether there is sufficient evidence to sustain a conviction should be dealt with at trial after" the United States presents its case. *Id.* The United States also asks the court to "follow its previous ruling . . . and deny the motion at this time[,]" noting that the court rejected a similar argument in an earlier order denying Richmond's motion to dismiss. *Id.*

As stated in the court's previous order denying Richmond's motion to dismiss, Richmond's argument about the sufficiency of the evidence is premature because "[s]uch an argument is proper only after the United States has finished presenting evidence at trial." Docket 68 at 8. "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial[,] the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Hemme*, 987 F. Supp. 2d 940, 943 n.2 (D. Minn. 2013) (internal quotation marks and citation omitted). The United States has previously stated that it intends to put forth its evidence at trial, Docket 65 at 3, which is a valid exercise of its discretion in a criminal case, *see United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025) ("[T]he government has no duty to reveal all of its proof before trial. . . . [And] the government is not required to present its case in response to a motion to dismiss.") (citations omitted). The United States has indicated that it presented "some" evidence from its case in chief during the suppression hearing, which is not a "full proffer of the evidence it intends

to present at trial." *Hemme*, 987 F. Supp. 2d at 943 n.2. Thus, Richmond's motion to dismiss based on lack of evidence is denied at this time.

### C.    Prosecutorial Misconduct

Richmond contends that the indictment should be dismissed for prosecutorial misconduct, asserting that this case was filed in retaliation for his filing a civil lawsuit against Minnehaha County. Docket 96 at 3. Richmond states that he sued Minnehaha County, the County failed to respond, and, just as he was preparing to seek a default judgment, federal authorities arrested him and unlawfully detained him in the county jail for five days. *Id.* Richmond argues that "[t]his mathematical precision across multiple agencies proves coordinated retaliation against a federal civil rights plaintiff." *Id.*

The United States in response states that Richmond failed to provide any evidence of his prosecutorial misconduct claim. Docket 114 at 5. "Since there is no evidence supporting Richmond's claims, and since there is significant evidence supporting that he was involved [in] drug distribution," the United States argues that "Richmond's motion to dismiss based on alleged retaliation should be denied." *Id.* at 6.

For the same reasons the court denied a similar argument made by Richmond in his prior motion to dismiss, Richmond's argument here fails as a matter of law. *See* Docket 68 at 8-9. The Eighth Circuit has laid out the two ways a defendant can prove prosecutorial vindictiveness:

> [F]irst, with objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges. Absent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to

show a reasonable likelihood of vindictiveness exists. In determining
whether the presumption of vindictiveness applies [the court]
examine[s] the prosecutor's actions in the context of the entire
proceedings.

*United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) (internal quotation
marks and citations omitted).

Richmond fails to prove prosecutorial vindictiveness under either
framework. First, Richmond offers no objective evidence in the record that the
United States filed the indictment to punish Richmond for exercising his legal
rights. Second, the circumstances surrounding Richmond's effort to obtain a
default judgment in his federal civil case and his subsequent arrest by federal
authorities do not establish a reasonable likelihood of vindictiveness, so no
presumption of vindictiveness is warranted. Richmond's only argument is that
the timing of his indictment and arrest in this case is directly linked to his
attempt to secure a default judgment in his federal civil case. Docket 96 at 3.
"[B]ut timing alone is insufficient to trigger the presumption of vindictiveness."
*Williams*, 793 F.3d at 963. Richmond "provides no evidence—aside from the
timing—to show the context of the proceedings present[s] a reasonable
likelihood of vindictiveness, and thus he fails to meet his heavy burden to
establish prosecutorial vindictiveness." *Id.* at 963-64.

### D.    Federal Jurisdiction

Richmond next argues that the United States has failed to establish
jurisdiction, and thus the indictment should be dismissed. Docket 96 at 4. In
support, Richmond asserts that "[d]rug crimes are typically state matters[,]"

and there is no (1) involvement of interstate commerce, (2) use of federal property, or (3) crossing of state lines. *Id.*

In response, the United States asserts that the three federal statutes under which he is charged—21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 922(g)—foreclose his argument. Docket 114 at 6. The United States explains that "[a]ll three statutes provide a basis for federal jurisdiction of the charges against Richmond." *Id.*

Subject-matter jurisdiction is defined as the "courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (internal quotation marks omitted). Importantly, "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Congress has vested federal courts with subject-matter jurisdiction over criminal cases involving "all offenses against the laws of the United States." 18 U.S.C. § 3231; *see United States v. Harcevic*, 999 F.3d 1172, 1178 (8th Cir. 2021).

Here, the United States has charged Richmond with violating three federal statutes—21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 922(g)—all enacted by Congress and signed into law by the President. *See* Docket 1. Under 18 U.S.C. § 3231, federal district courts possess original jurisdiction to adjudicate all violations of federal law. 18 U.S.C. § 3231. It therefore follows that this court has jurisdiction to preside over Richmond's case, in which the United States has charged him with three violations of federal law. *See United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) (explaining that "a federal

15

district court plainly possesses subject-matter jurisdiction over drug cases"
(quoting *Prou v. United States*, 199 F.3d 37, 45 (1st Cir. 1999)). Because 18
U.S.C. § 3231 confers jurisdiction on this court to adjudicate the three federal
statutes under which he is charged, Richmond's argument fails. *See Lamar v.
United States*, 240 U.S. 60, 65 (1916) (holding that "nothing can be clearer
than that the district court . . . has jurisdiction of all crimes cognizable under
the authority of the United States").

     **E.**    **Evidence Tampering**

Lastly, Richmond contends that the United States has engaged in
"systematic tampering with video evidence shown to five successive defense
attorneys, each of whom saw progressively more edited versions of the same
videos, all while the government sealed the case to hide the evidence
tampering." Docket 100 at 1 (emphasis omitted). Richmond explains that "[t]his
is a criminal conspiracy involving prosecutors, law enforcement, court-
appointed attorneys, and private attorneys, all working together to ensure
[Richmond's] conviction despite knowing the arrest was illegal and the evidence
was fabricated through systematic editing." *Id.* at 2. Specifically, Richmond
claims that the omitted video evidence would show (1) that the officers did not
have a warrant for his arrest, (2) the officers' statements explaining the reasons
for his arrest, (3) the timeline of his alleged illegal detention, and (4) his
condition when brought in for questioning. *Id.* at 3. Richmond asserts that
such tampering violates the dictates of *Brady v. Maryland*, 373 U.S. 83 (1963),

the Fifth Amendment's Due Process Clause, the Sixth Amendment's right to counsel, and 18 U.S.C. §§ 1519, 1503, and 371.[7] *Id.* at 5-6.

In response, the United States argues that Richmond's argument fails because it "rests largely on factual allegations with little to no legal authority or citations beyond conclusory statements that others have committed criminal offenses." Docket 114 at 6. The United States asserts that "[t]he video evidence in the possession of the Government does not comport with Richmond's claims of evidence tampering" because none of the "videos have been manipulated in any way through the course of the investigation." *Id.* at 8. As such, the United States contends that Richmond's allegations of evidence tampering fail because (1) he has produced no evidence of tampering, (2) the video evidence in the record contradicts his claims, (3) the United States has never claimed to possess an arrest warrant for Richmond (only search warrants), and (4) the court has already suppressed the DEA interview due to a *Miranda* violation at the outset of the interview. *Id.* at 8-9.

---

[7] Under 18 U.S.C. § 1519, it is a crime for someone to knowingly alter any record, document, or tangible object with the intent to impede or obstruct an investigation "of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519. Under 18 U.S.C § 1503, it is a crime to corruptly influence, obstruct, or impede the due administration of justice. *See* 18 U.S.C § 1503. Under 18 U.S.C. § 371, it is a crime to conspire to commit an offense against the United States or defraud the United States. *See* 18 U.S.C. § 371. But it is the government, and not a criminal defendant, that holds the power to prosecute for violations of federal laws. *See United States v. White*, 928 F.3d 734, 742 (8th Cir. 2019) ("In our criminal justice system, *the Government* retains 'broad discretion' as to whom to prosecute." (emphasis added and internal quotation marks omitted)). Thus, Richmond's contention that the United States violated 18 U.S.C. §§ 1519, 1503, and 371 is therefore inappropriate in the context of a motion to dismiss.

A Fifth Amendment "due process violation arises from destruction of evidence when the evidence 'possesses an exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " *United States v. Tyerman*, 701 F.3d 552, 560 (8th Cir. 2012) (cleaned up) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). But if the evidence is only potentially useful to the defendant, a higher standard of proof applies. *See id.* "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* (cleaned up and internal quotation marks omitted).

Under *Brady*, "the prosecution's suppression of requested evidence favorable to an accused 'violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *United States v. Wadlington*, 233 F.3d 1067, 1076 (8th Cir. 2000) (quoting *Brady*, 373 U.S. at 87). "A *Brady* violation will be found if: 1) the prosecutor suppresses the evidence after a request by the defendant; 2) the evidence was favorable to the defendant; and 3) the evidence was material to his defense." *Id.*

The Sixth Amendment right to effective assistance of counsel exists "to ensure that criminal defendants receive a fair trial." *Spring v. Payne*, 95 F.4th 596, 601 (8th Cir. 2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). To succeed on an ineffective assistance of counsel claim, a defendant

must show: "(1) that 'counsel's representation fell below an objective standard of reasonableness' in light of 'prevailing professional norms' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 687-88). Both prongs must be satisfied to prevail on an ineffective assistance of counsel claim. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006).

Richmond's conclusory statements about video evidence tampering are without merit. Richmond alleges that the deleted video footage would show: (1) that the officers did not have an arrest warrant, (2) that the officers failed to explain the reasons for his arrest, (3) the timeline of his detention, and (4) his physical condition during questioning. Docket 100 at 3. But the court, in its Order Adopting the Report and Recommendation, decided not to reach the issue of whether Richmond's arrest during the traffic stop was supported by probable cause because, even if it was not, "the proper remedy would be to suppress any statements he made thereafter as fruit of an illegal arrest." Docket 67 at 4. The allegedly tampered video has already been suppressed, so the United States is prohibited from using it as evidence in its case-in-chief during trial. *See* Docket 67 at 1 n.2; Docket 114 at 9 (The United States explaining that it "has already agreed not to use the interview video from the DEA" at trial). Additionally, because Richmond has provided no evidence of his allegations, he has not shown that any missing data would be exculpatory. *See Wadlington*, 233 F.3d at 1076-77 ("Mere speculation that materials may

contain exculpatory evidence is not . . . sufficient to sustain a *Brady* claim.”). The Due Process Clause and *Brady* require more. *See Tyerman*, 701 F.3d at 560; *Wadlington*, 233 F.3d at 1076.

Finally, for similar reasons, Richmond’s Sixth Amendment claim also fails. Richmond has provided no evidence to support his allegation that his five former attorneys conspired to secure a conviction against him. *See* Docket 100 at 3-4. He merely states that “[t]he probability that five consecutive attorneys would all be ineffective by chance is statistically impossible.” *Id.* at 4. Because Richmond has provided no evidence to satisfy either *Strickland* prong—let alone both—his argument is unavailing.

## II.    Motion for Return of Property

Richmond moves this court for an order compelling the United States to return his cell phone that was seized in connection with case number 4:24-CR-40005-KES, which has now been dismissed. Docket 106 at 1. Richmond also complains that, by retaining his cell phone, “the prosecution is committing a flagrant and ongoing *Brady* violation.” *Id.* at 2.

Federal Rule of Criminal Procedure 41(g) provides that “[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property’s return.” Fed. R. Crim. P. 41(g). “The movant must establish lawful entitlement to the property.” *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008). “This burden is often satisfied by showing that the property was seized from the movant’s possession, as a person from whom property is seized is presumed to have a right to its return.”

20

*Id.* "The government must then establish a legitimate reason to retain the property, which may be satisfied by showing a cognizable claim of ownership or right to possession adverse to the movant's." *Id.* at 397. "A Rule 41(g) motion 'is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.' " *Id.* (quoting *United States v. Vanhorn*, 296 F.3d 713, 719 (8th Cir. 2002)).

Richmond asserts that because the charge in case number 4:24-CR-40005-KES was dismissed—"terminating the legal proceedings for which the property was allegedly held"—the United States "currently has no legal basis to retain" his cell phone. *Id.* at 1-2. Because the property was seized from Richmond's possession, he satisfied his initial burden and is presumed to have a right to its return unless the United States can show a legitimate reason otherwise.

The United States has met its burden showing it has a legitimate reason to retain Richmond's cell phone. The United States asserts that the phone was taken pursuant to the search warrant and is "an important piece of evidence for th[is] case" and "intends to offer [it] as an exhibit at trial." Docket 115 at 2. This reason is sufficiently legitimate.[8] *See Jackson*, 526 F.3d at 397.

---

[8] Richmond's argument—that he is entitled to the return of his cell phone because case number 4:24-CR-40005-KES was dismissed—is misplaced. Merely because case number 4:24-CR-40005-KES was dismissed does not automatically entitle Richmond to the return of the cell phone. As stated above, the United States intends to use the cell phone as evidence at trial, which provides it with a legitimate reason to retain the property. *See* Docket 115 at 1-2.

Finally, Richmond's reliance on *Brady*—claiming that the United States is preventing him from accessing information essential to his defense—is meritless. *See* Docket 106 at 2. As mentioned before, *Brady* requires the United States to disclose evidence favorable to the accused that is material to guilt or punishment, and this obligation extends to impeachment evidence. *United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009). "To show a *Brady* violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." *Id.* The United States, however, has not suppressed any evidence. The contents from the phone have been extracted, and the United States asserts that the extraction is available for inspection. Docket 115 at 2. Because Richmond is free to access the phone's contents through discovery, including any allegedly exculpatory material, no *Brady* violation has occurred.

## CONCLUSION

Based on the foregoing, it is

ORDERED that Richmond's Motions to Dismiss the Indictment (Docket 96 and Docket 100) are DENIED. It is

FURTHER ORDERED that Richmond's Motion for Return of Property (Docket 106) is DENIED.

Dated November 25, 2025.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE