UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>COURTNEY RICHMOND,<br><br>Defendant. | 4:24-CR-40139-KES<br><br><br>ORDER ON PENDING MOTIONS |

Pro se defendant, Courtney Richmond, filed several motions that are pending before the court. Richmond moves for this court to recuse itself. Dockets 132, 175, 176. Richmond moves to dismiss the indictment. Dockets 130, 132, 140, 150-52, 155, 167, 177-180, 187. Richmond moves to unseal case number 4:24-CR-40005-KES. Dockets 132, 169. Richmond also seeks to compel the production of *Brady* and *Giglio* material and all other relevant discovery. Dockets 129, 145-49, 169, 187. Finally, Richmond moves for a change of venue. Dockets 153, 157. The court issues the following order.

## I.    **Motions to Recuse**

Richmond moves for this court to recuse itself. *See* Docket 175; Docket 176; *see* Docket 132 at 5-6. Richmond argues that this court is "a named defendant in a related civil lawsuit filed by [him], has personal knowledge of disputed evidentiary facts central to this case, has demonstrated a deep and pervasive bias against [him], and her impartiality is impossible under any

objective standard." Docket 175 at 1. On that basis, Richmond contends that this court's recusal is mandatory. *Id.* at 3. Richmond also calls for "the immediate and mandatory recusal of Chief Judge Roberto A. Lange." Docket 176 at 1. Richmond argues that "since 2017, Chief Judge Roberto A. Lange has been a central figure in a systematic effort to deny [him] access to justice." *Id.* at 2. Because Judge Lange is also a named defendant in his civil rights lawsuit, Richmond maintains that "[h]is continued presence on this case is a flagrant violation of federal law and the Due Process Clause." *Id.*

Richmond's recusal motions are denied. In a prior order, the court addressed Richmond's argument that this court's inclusion as a defendant in a civil lawsuit he filed required recusal. *See* Docket 143. This court rejected that contention as meritless, explaining that a fully informed, reasonable observer would conclude that it lacked any factual basis for impropriety and failed to create the appearance of bias. *Id.* at 9. Because Richmond raises no new arguments and identifies no changed circumstances since that order, the court denies the present motion. *See id.* at 1-9. The court also denies Richmond's motion seeking Chief Judge Lange's recusal because Chief Judge Lange is not presiding over this case. Because Chief Judge Lange has no role in these proceedings, there is no basis—legal or otherwise—for recusal. Thus, Richmond's motions for recusal are denied.

## II.    Motions to Dismiss

Richmond moves to dismiss the indictment, contending that it is the product of a conspiracy to deprive him of his civil rights; that his arrest was

unlawful; that this court is conflicted and therefore disqualified from presiding over the case; that the United States has tampered with evidence and unlawfully seized his phone; and that his prosecution is retaliatory. Docket 130 at 2-6. Richmond invokes the First, Fourth, Fifth, and Seventh Amendments in support of his arguments, but he cites no legal authority and offers no evidence to substantiate his allegations. *See id.* at 6. Richmond's other pending motions to dismiss largely reiterate the same arguments. *See* Docket 140 (arguing his arrest was unlawful, his prosecution violates the Double Jeopardy Clause, the court is conflicted and therefore disqualified from presiding over the case, and the indictment constitutes retaliatory prosecution); Docket 150 (contending the court is conflicted and thus disqualified from presiding over the case); Docket 152 (maintaining his arrest was unlawful); Docket 155 (arguing the United States is vindictively prosecuting him); Docket 167 (contending his indictment is a "Triple Jeopardy Violation" and the United States continues to conceal exculpatory evidence); Docket 177 (alleging a governmental conspiracy to persecute him and violate his constitutional rights); Docket 178 (arguing the United States is violating *Brady*, has engaged in evidence tampering, unlawfully seized and retained property, and is vindictively prosecuting him); Docket 179 at 4-6 (same).

This court has previously considered and rejected the same arguments Richmond now advances in his current motions. *See* Docket 68 (denying motion to dismiss); Docket 123 (denying two motions to dismiss); Docket 126 (denying motion to recuse); Docket 143 (denying renewed motion to recuse).

The order denying Richmond's prior motions to dismiss addressed his arguments concerning alleged violations of the Due Process and Double Jeopardy Clauses (Docket 68 at 7; Docket 123 at 7-11); vindictive prosecution (Docket 68 at 8-9, Docket 123 at 13-14); lack of federal jurisdiction (Docket 123 at 14-16); evidence tampering (Docket 123 at 16-20); *Brady* violations (Docket 68 at 9-10); and the sufficiency of the United States's evidence (Docket 68 at 6-9; Docket 123 at 11-13). This court has also addressed Richmond's arguments concerning the alleged governmental conspiracy to persecute him and violate his constitutional rights, which was the basis of his renewed motion for this court to recuse itself. *See* Docket 143 at 2-9.

The only new argument Richmond advances is that the grand jury proceedings were a "sham." Docket 151 at 3; *see* Docket 179 at 1 (arguing that the United States "has failed to provide any evidence that a grand jury ever returned a true bill"); Docket 148 at 3 (maintaining that the grand jury indictment records are fraudulent and must be produced); Docket 187 at 2 (contending that "[t]he prosecution has never produced a valid federal Grand Jury indictment in this case"). Richmond relies on the Fifth Amendment and argues that, "[w]ithout a valid indictment returned by a grand jury, this [c]ourt lacks subject matter jurisdiction to hear this case, and the charges against [him] are a legal nullity." Docket 179 at 2. He claims that "[t]he indictment is the sole instrument that confers jurisdiction upon the court in a felony case." *Id.* at 3. Emphasizing that "[t]he burden is on the government to establish jurisdiction," Richmond contends that "[t]he government's refusal to produce

4

th[e indictment], particularly after promising it, must be construed against [it]."
*Id.* On that basis, Richmond asserts that because "there was no grand jury,"
the charges were likely "brought by information or complaint alone, which is
constitutionally insufficient for" the charges he faces. *Id.*

Richmond's argument, however, is without merit. The record reflects that
on November 14, 2024, the grand jury returned an indictment charging
Richmond with three felony counts: Conspiracy to Distribute a Controlled
Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Possession of a
Controlled Substance with the Intent to Distribute, in violation of 21 U.S.C
§ 841(a)(1); and Possession of a Firearm by a Prohibited Person, in violation of
18 U.S.C. §§ 922(g)(1) and 924(a)(8). Docket 1. Any suggestion that no
indictment exists is dispelled by the record, which plainly reflects that it was
filed in November 2024. *See id.*

Moreover, Richmond's suggestion that the United States must separately
produce the indictment beyond its filing on the docket misconceives the nature
of Rule 10 of the Federal Rules of Criminal Procedure. Rule 10(a) requires that
an arraignment consists of (1) "ensuring that the defendant has a copy of the
indictment or information;" (2) reading the indictment or its substance to the
defendant, and (3) asking the defendant to enter a plea. Fed. R. Crim. P.
10(a)(1)-(3). The advisory committee notes make clear that the requirement to
provide the defendant with a copy of the indictment was added to formalize
prevailing practice and that failure to comply with these arraignment
requirements is not jurisdictional but rather a procedural irregularity that does

not warrant reversal absent timely objection. *See id.* advisory committee's notes (1944 amendment). Thus, where an indictment has been returned by a grand jury, filed on the docket, and made available to the defendant, there is no basis to invalidate or dismiss the indictment on the theory that the United States failed to provide it.

Here, the grand jury returned an indictment, and it was filed on the docket. *See* Docket 1. At his arraignment one week later, Richmond was provided a copy of the indictment and the United States read it aloud to him, and advised him of the maximum potential penalties for each count. *See* Docket 7 at 3:37:00-3:42:45. Richmond then pleaded not guilty. *Id.* at 3:58:00-3:58:15. Even assuming Richmond's allegation is true, merely because the United States has not provided Richmond with another copy of the indictment is not grounds to dismiss it. Again, Rule 10's purpose is to ensure that the defendant is informed of the charges and has access to the charging instrument at the time of arraignment, not to create a freestanding production obligation beyond the ordinary procedural mechanisms.

Furthermore, Richmond's assertion that [t]he indictment is the sole instrument that confers jurisdiction upon the court in a felony case," Docket 179 at 3, is incorrect as a matter of law. Federal jurisdiction in criminal cases derives from 18 U.S.C. § 3231, which grants district courts original jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231. An indictment serves as the constitutionally required charging instrument in most felony cases, *see* U.S. Const. amend. V, but it is not the source of the court's

6

authority to adjudicate the case, *see United States v. Cotton*, 535 U.S. 625, 630-31 (2002). As the Supreme Court has explained, "defects in an indictment do not deprive a court of its power to adjudicate a case"; objections grounded in the indictment's form or sufficiency "go[] only to the merits of the case" and do not affect the court's authority to preside over the prosecution of a federal criminal defendant. *Id.*; *see Lamar v. United States*, 240 U.S. 60, 64-65 (1916); *United States v. Williams*, 341 U.S. 58, 66 (1951). As such, defects in an indictment—or disputes concerning its form, sufficiency, or provision—do not divest a federal court of jurisdiction.

To the extent Richmond is attacking the indictment on the ground that the United States presented insufficient evidence to the grand jury, his argument is unavailing. "It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999). "[C]hallenges to the evidence's 'sufficiency [are] tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29,' not by a 'dismissal of an indictment on the basis of predictions as to what the trial evidence will be.' " *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (alteration in original) (quoting *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)). For the reasons stated above, Richmond's motions to dismiss are denied.

### III.     Motions to Compel

Richmond moves to compel discovery. *See* Dockets 129, 145-49, 169. Richmond seeks to compel the production of (1) an arrest warrant, (2) *Giglio* material, (3) evidence of the alleged conspiracy, (4) *Brady* material, (5) certain body- and dash-camera footage, (6) and prior related state and federal case records.[1] *See* Dockets 129, 145-49, 169, 187. The United States opposes Richmond's motions. *See* Dockets 138, 173.

The United States contends that Richmond's motions should be denied because he failed to meet and confer as required by the court's discovery order (Docket 109). Docket 138 at 1-2; Docket 173 at 1-2. Richmond's noncompliance with that order was also the basis for the court's denial of his prior motion to compel discovery. *See* Docket 122. Although it appears Richmond has again failed to satisfy the meet-and-confer requirement, the court addresses the merits of his pending motions to compel.

### A.     Motion to compel the production of an arrest warrant

Richmond first seeks an order compelling the United States "to produce the arrest warrant that authorized his seizure on December 14, 2023." Docket 145 at 1. Richmond argues that the United States "must be compelled to produce the specific document that authorized the seizure of [his] person" and that "[i]f no such warrant exists, the arrest was illegal, and all evidence

---

[1] Richmond also moves to compel the return of unlawfully seized property. *See* Docket 132 at 6-7. But Richmond's arguments concerning his seized property are simply reiterations of previous contentions made by him, which this court already addressed. *See* Docket 123 at 20-22. For the same reasons as before, Richmond's motion is denied.

obtained as a result must be suppressed." *Id.* at 2. The United States contends that "[t]he issue regarding the warrant has been litigated extensively," that it previously provided the search warrants in discovery, and that the search warrants were entered into the record as exhibits during Richmond's suppression hearing. Docket 173 at 2.

The record reflects that no arrest warrant was issued in connection with Richmond's arrest on December 14, 2023. *See* Docket 44 at 19-20. That fact alone, however, does not render his arrest unlawful. In the Report and Recommendation later adopted as amended by this court, *see* Docket 67, the magistrate judge explained that although Trooper Jansen mistakenly told Richmond that an arrest warrant existed, Richmond's detention during the traffic stop and for the first two hours thereafter was not unlawful, Docket 44 at 19-20. As the magistrate judge reasoned, "[b]oth search warrants allowed police to search the person of Mr. Richmond." *Id.* at 20. The magistrate judge was correct. It follows, then, that the absence of an arrest warrant does not nullify his detainment while law enforcement conducted the search of his vehicle and home, nor does it invalidate his ultimate arrest.

Consistent with this reasoning, the Supreme Court has long held that officers executing a valid search warrant may detain occupants for a reasonable period without violating the Fourth Amendment. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981); *Bailey v. United States*, 568 U.S. 186, 195 (2013). Additionally, the Supreme Court has held that such a detention may include reasonable measures—including the use of handcuffs—and that the

9

authority to detain in this context does not depend on an independent showing of reasonable suspicion. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005).

Because no arrest warrant exists for his December 14, 2023, arrest, Richmond's motion to compel its production is denied.

**B.     Motion to compel the production of evidence of the alleged conspiracy and any *Giglio* or *Brady* material**

Richmond moves to compel the United States to "produce all outstanding discovery pursuant to Federal Rule of Criminal Procedure 16," and "all exculpatory and impeachment evidence required under *Brady v. Maryland* and *Giglio v. United States*." Docket 146 at 1-2; *see* Docket 129 at 1-3; Docket 169 at 1-3; Docket 187 at 2-3. Richmond argues that, under Rule 16, he is "entitled to discovery of information that is material to the preparation of his defense," which includes the list of witnesses that the United States intends to call in its case-in-chief. Docket 146 at 2. Richmond also contends that he is entitled to discovery of all evidence supporting the conspiracy charge because, without its production, "the conspiracy charge is nothing more than a baseless allegation designed to prejudice the jury." *Id.* Richmond further maintains that under *Giglio v. United States*, 405 U.S. 150 (1972), the United States "must disclose any and all information that could be used to impeach the credibility of its witnesses." *Id.* This includes "[t]he complete criminal history (rap sheet) for every government witness[,] . . . [a]ny and all promises, payments, or inducements made to any witnesses in exchange for their testimony, . . . [and a]ny evidence that a witness is a confidential informant, has a reputation for

untruthfulness, or has a bias against [him]." *Id.* at 3. Finally, Richmond argues

that the restrictions placed on his access to discovery are unconstitutional.

Docket 187 at 3.

In response, the United States represents that it "intends to turn over a

witness list in the normal course of the proceedings, which is usually the

Friday before the scheduled trial date," and explains that "Richmond has cited

to no basis for why witness names should be provided sooner to him than any

other defendant." Docket 173 at 2. With respect to the evidence supporting the

conspiracy charge, the United States asserts that such evidence "is available

for Richmond's inspection pursuant to the magistrate judge's [discovery] order

at R. Doc. 47." *Id.* The United States further represents that it has produced all

exculpatory and inculpatory evidence in discovery and that any additional

exculpatory evidence that comes to light will be promptly disclosed to the

defense. *Id.*

Under Federal Rule of Criminal Procedure 16 and 18 U.S.C. § 3500 (the

Jencks Act), the United States is required to produce only the defendant's own

statements before trial. *See* Fed. R. Crim. P. 16(a)(1)(A)-(B). Statements of other

witnesses need not be disclosed until after the witness has testified on direct

examination. *See* Fed. R. Crim. P. 26.2. To the extent photographs constitute

part of a witness's statement, they must be produced on the same schedule.

*See Simmons v. United States*, 390 U.S. 377, 387 n.7 (1968).

The United States is likewise not required to disclose grand jury

transcripts unless the defendant testified before the grand jury. *See* Fed. R.

Crim. P. 6. With respect to physical evidence, the United States must permit inspection of items it intends to use in its case-in-chief, items it knows or should know are material to preparing the defense, and items obtained from the defendant. *See* Fed. R. Crim. P. 16(a)(1)(E)-(G).

Here, the United States asserts that it will disclose witness statements and related materials on the Friday before trial, which constitutes a concession beyond what the law requires. Additionally, the court has already ordered the United States to turn over all *Brady* and *Giglio* material. *See* Docket 7; *see also* Docket 17 at 2-3. The United States explains that if any exculpatory evidence comes to light before trial begins, it will be turned over to the defense immediately. *See* Docket 173 at 2. Richmond is correct that he is entitled to discovery of evidence supporting the conspiracy charge. Docket 146 at 2. Even so, the United States represents that it has made such discovery available for his inspection at the United States Attorney's office. At this juncture, the court finds no indication that the United States has failed to comply with the Federal Rules of Criminal Procedure or the District's local rules.

Finally, Richmond argues that the restriction on discovery violates his Sixth Amendment rights.[2] Docket 169 at 3. Richmond contends that "[t]he

---

[2] Richmond also moves to unseal case number 4:24-CR-40005-KES and contends that sealing it serves no legitimate purpose. Docket 169 at 3; *see also* Docket 132 at 10. Richmond maintains that it was first sealed by Magistrate Judge Duffy and then resealed by this court "to hide the egregious constitutional violations and to protect the government actors involved in this conspiracy" to violate his constitutional rights. Docket 169 at 3. Richmond argues that because the sealed case contains exculpatory evidence, it should be unsealed immediately. *Id.* But Richmond's argument has no merit because

restriction requiring discovery review at the prosecutor's office, coupled with the prosecutor's refusal to provide access, renders [his] right to review evidence meaningless." *Id.*

In response, the United States asserts that, notwithstanding Richmond's agreement to abide by the protective order, good cause exists for the court to impose appropriate discovery restrictions in this case. *See* Docket 173 at 6. The United States contends that the discovery materials contain sensitive information, including the identity of a confidential informant, details regarding the informant's assistance to law enforcement, and the names of other individuals who provided information about Richmond's activities, all of which must be protected from public dissemination. Docket 14 at 4-5. Moreover, the United States explains that Richmond has recorded court proceedings in direct contravention of the court's instructions and has filed copies of those recordings on the docket. Docket 173 at 6-7 (citing Docket 120). This conduct, according to the United States, demonstrates that Richmond is unlikely to comply with any court-imposed restrictions governing the dissemination of materials in his possession. *Id.* The United States asserts that "Richmond has lied about not being able to access discovery [and] has not availed himself of the opportunity to review discovery." *Id.* at 7. The United States argues that this demonstrates that the discovery restrictions are necessary and that Richmond should not be entitled to personal copies of discovery. *Id.*

---

case number 4:24-CR-40005-KES is not sealed. Thus, his motions are denied as moot.

13

"Criminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000); *see also United States v. Altman*, 507 F.3d 678, 680 (8th Cir. 2007) ("Due process requires merely that the government disclose all material or potentially exculpatory evidence before the trial ends."). As such, "a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Johnson*, 228 F.3d at 924.

Federal Rule of Criminal Procedure 16 requires the government, upon the defendant's request, to disclose "any relevant written or recorded statement by the defendant if the statement is within the government's possession, custody, or control" and the government knows, or could reasonably learn, that the statement exists. Fed. R. Crim. P. 16(a)(1)(B)(i). Additionally, upon the defendant's request, the government must allow the defendant to inspect and copy any documents, papers, photographs, or tangible objects that the government intends to offer in its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(E). Rule 16 allows the court to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief[,]" upon a showing of "good cause." Fed. R. Crim. P. 16(d)(1). "The good cause requirement does not mandate an individualized inquiry but an individualized inquiry assists a court in analyzing whether the moving party has met its burden of proof." *United States v. Driscoll*, 122 F.4th 1067, 1069-70 (8th Cir. 2024) (citation omitted); *see also United States v. Ladeaux*, 61 F.4th 582, 585-86 (8th Cir. 2023).

14

The Federal Rules also authorize district courts to promulgate local rules. *See* Fed. R. Crim. P. 57(a)(1). "[T]he application of local rules is a matter peculiarly within the district court's province." *Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (8th Cir. 1992) (citation omitted); *see also Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 579 (8th Cir. 2006) ("District courts have broad discretion to . . . enforce local rules.") (overruled on other grounds). But a district court's discretion in promulgating local rules is not unlimited. *Frazier v. Heebe*, 482 U.S. 641, 645-46 (1987). "A local rule must be consistent with—but not duplicative of—federal statutes and rules." Fed. R. Crim. P. 57(a)(1).

Pursuant to Rule 57, the District of South Dakota promulgated Local Rule 16.1. Local Rule 16.1 requires the United States and defense counsel to enter into a joint stipulation that "restricts dissemination of discovery materials and precludes defense counsel from giving discovery materials to the defendant without the court's express permission." D.S.D. Crim. LR 16.1.

Here, because Richmond refused to sign the standard stipulation ordinarily executed in criminal cases under Local Rule 16.1, he instead stipulated to a modified agreement that limits the scope of his access to discovery. *See* Docket 45; Docket 17 at 4. The court subsequently entered an order providing that, because Richmond is acting pro se, he may review discovery only at the United States Attorney's office on a computer containing the discovery for his case. Docket 47. The order requires Richmond to provide two days' advance notice before reviewing discovery, prohibits anyone from accompanying him, and limits review to standard business hours, Monday

15

through Friday. *Id.* at 1-2. It further prohibits Richmond from bringing any camera or recording device with him and from copying or removing any materials from the office. *Id.* at 2.

Here, the discovery restrictions imposed on Richmond are not unconstitutional. He has no general constitutional right to discovery, *Johnson*, 228 F.3d at 924, and points to no statute, rule of criminal procedure, or other legal authority to support his contention that such restrictions violate his rights, *see* Docket 169. Regardless, good cause exists to restrict Richmond's access to the discovery materials because such restrictions are necessary to protect the integrity of ongoing investigations and related prosecutions. *See Ladeaux*, 61 F.4th at 586. The materials identify a confidential informant and describe the informant's cooperation with law enforcement, the disclosure of which could compromise the informant's safety, deter future cooperation, and reveal investigative techniques. The discovery also contains the names of other individuals who provided information regarding Richmond's activities, the premature release of which could alert potential targets, impede law enforcement's ability to gather evidence, and interfere with the prosecution of related cases. Because the dissemination of this information could jeopardize both the safety of cooperating witnesses and the effective administration of justice, tailored restrictions on Richmond's access to discovery are warranted. As such, Richmond's argument that the discovery restrictions are unconstitutional has no merit.

Richmond argues that he "has made at least four (4) formal requests for discovery, all of which have been ignored or obstructed by the prosecution." Docket 169 at 1; *see also* Docket 187 at 2 (stating that "the prosecution continues to withhold 100% of discovery from [him]"). Richmond, however, provides no evidence to support this assertion. The United States contends that Richmond scheduled times to review discovery on April 18, 2025, and November 12, 2025, but failed to appear on both occasions. Docket 173 at 5. Absent any evidence to substantiate his assertions, Richmond's claim that he has made four formal discovery requests that the United States has ignored is likewise without merit. Pursuant to the stipulation that Richmond signed, if he wants to review the discovery, he needs to provide two days' advance notice and review the discovery on a computer at the United States Attorney's office. *See* Docket 45; Docket 47.

Thus, Richmond's motions to compel production of evidence of the alleged conspiracy and any *Giglio* or *Brady* material is denied.

### C.    Motion to compel production of video evidence

Richmond moves to compel the United States "to produce all body camera and dash camera footage related to his arrest, the seizure of his vehicle, and the entry into his home," Docket 149 at 1; *see* Docket 147 at 1-3, as well as a video recording of his interrogation, Docket 147 at 3. He argues that the absence of body-camera footage demonstrates bad faith, asserting that it "creates a strong inference that the evidence was destroyed or withheld to hide the fact that the officers framed [him]." Docket 149 at 2-3. In response,

the United States explains that that no body-camera footage exists because the troopers and agents executing the search warrants did not wear body cameras. Docket 173 at 3. The United States further represents that the dash-camera footage from the troopers' vehicles and the interrogation video have already been produced in discovery. *Id.*

It appears there is nothing further for the court to compel or remedy. After Richmond previously filed a similar motion to compel, the magistrate judge found that the United States has made such evidence available in discovery and that there was nothing left for the court to do. Docket 17 at 4. Because the United States cannot be compelled to produce evidence that does not exist, *see* Fed. R. Crim. P. 16(a)(1)(E), and because speculative allegations are insufficient to establish bad faith, *see Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), Richmond's motion is moot and does not warrant relief.

### D.    Motion to compel production of court records

Richmond moves to compel "the production of official court records from prior related state and federal cases." Docket 148 at 1. Richmond seeks a dismissal letter from a "prior related state case against [him]" and transcripts from "numerous hearings in both state and federal court."[3] *Id.* at 2. Richmond asserts that "[t]hese records are essential for the preparation of his defense, are

---

[3] Richmond seeks transcripts from the following hearings: (1) "Hearing on or about January 9, 2023 (Old Case)"; (2) "Hearing on or about May 5-6, 2024 (Old Case)"; (3) "Suppression Hearing on or about March 18, 2025 (New Case)"; (4) "Hearing on or about September 9, 2025 (New Case)"; (5) "Hearing on or about October 27, 2025 (New Case)"; and (6) "[a]ny and all other hearings from the 2024 old case and the 2025 new case for which transcripts exist." Docket 148 at 2.

directly relevant to the current malicious prosecution, and contain critical exculpatory evidence." *Id.* at 1. Richmond contends that "failure to provide these documents is a violation of [his] due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963)." *Id.*

The United States argues that "[t]his motion should be denied because the records are irrelevant and are publicly available to him from the respective courts he has cited." Docket 173 at 3.

Under Federal Rule of Criminal Procedure 16(a)(1)(E), the United States must produce "books, papers, documents, data, photographs [or other] tangible objects" only if they are within its possession, custody, or control and are material to preparing the defense, intended for use at trial, or obtained from the defendant. Fed. R. Crim. P. 16(a)(1)(E). A defendant may not compel the United States to retrieve or produce records from state courts that are not within the government's possession, custody, or control, even if those records are publicly available. *See id.*; *see also United States v. Sarras*, 575 F.3d 1191, 1215 (11th Cir. 2009) ("[T]he government does not have a duty to disclose items it does not possess. Nor does it have a duty to obtain evidence it does not possess." (citation omitted)).

Here, Richmond neither asserts that the requested court records are within the United States's possession nor explains how they are material to preparing his defense or intended for use at trial. Because Richmond has made no such showing, his motion to compel production of court records is denied.

19

## IV.    Motions to Change Venue

On November 14, 2024, a federal grand jury indicted Richmond on charges of conspiracy to distribute 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841 and 846, possession of 50 grams or more of methamphetamine (actual) with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[4] Docket 1. On December 31, 2025, and January 7, 2026, Richmond filed motions seeking to change venue of the case. Docket 153; Docket 157. The United States opposes the motions. Docket 171.

The United States asserts that it seeks to prove Richmond worked with a former co-defendant and others to distribute methamphetamine in Sioux Falls, South Dakota. *Id.* at 3. The United States expects the evidence to show that, when agents executed search warrants on December 14, 2023, they found methamphetamine and firearms in Richmond's vehicle and at his home in South Dakota. *Id.*

Persons accused of a crime have "the right to a speedy and public trial, by an impartial jury of the [S]tate and district wherein the crime shall have been committed." U.S. Const. amend. VI. Unless a statute or the Federal Rules of Criminal Procedure provide otherwise, "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. "[I]n

---

[4] As relevant here, each of the three counts in the indictment state that the alleged conduct occurred "in the District of South Dakota." Docket 1 at 1-2.

a conspiracy case, venue is proper in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even though some of them were never physically present there." *United States v. Banks*, 706 F.3d 901, 904-05 (8th Cir. 2013) (cleaned up and internal quotations omitted). "Where the relevant facts are disputed, venue is a question of fact for the jury to decide," but "where the relevant facts are not in dispute, the court may determine venue as a matter of law." *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir. 2010).

Richmond argues that "the entire District of South Dakota is so prejudiced against [him] that he cannot obtain a fair and impartial trial in this district." Docket 157 at 1; *see* Docket 153. Richmond alleges that this court is involved in the existence of a vast governmental conspiracy to persecute him and violate his constitutional rights. Docket 157 at 2-5; *see* Docket 153. Richmond points to Federal Rule of Criminal Procedure 21(a) in support of his motion. Docket 157 at 1; Docket 153 at 1. Under Rule 21(a), "the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

The court denies Richmond's motions to change venue. The relevant facts underlying Richmond's motions are undisputed. He does not contest that the conduct charged in the indictment occurred outside the District of South Dakota, so the court may determine that venue is proper as a matter of law.

21

*See Nguyen*, 608 F.3d at 374. Importantly, Richmond has offered no evidence showing that venue in the District of South Dakota would subject him to "so great a prejudice" as to require a change of venue. Fed. R. Crim. P. 21(a). Nor does he identify any specific facts demonstrating that an impartial jury cannot be empaneled in this district. His allegations of a major conspiracy against him are merely conclusory and unsupported by the record. Thus, the court denies Richmond's motions.

The court must address one final issue. Richmond contends that "[e]ven if the prosecution were to comply with its obligations today, the Defendant, as a pro se litigant, requires adequate time to review what is likely hundreds or thousands of pages of documents, investigate the evidence[,] . . . interview witnesses, and prepare pretrial motions." Docket 187 at 2-3. Richmond further asserts that "[a]ccelerating the trial date while withholding all evidence makes a mockery of the Sixth Amendment right to prepare a defense." *Id.* at 3. Essentially, Richmond is arguing that the current trial schedule deprives him of a meaningful opportunity to prepare his defense.

But the record does not support this assertion. Richmond has been on notice of the trial date since late October 2025—when he again decided to proceed pro se in this matter, *see* Dockets 107, 109-110—and, during that time, has filed over thirty pretrial motions, underscoring that he has had both notice of the schedule and ample opportunity to prepare and litigate his defenses. He cannot now attempt to grandstand or delay his jury trial simply because he claims he is being rushed, particularly in light of the court's explicit

22

instruction during the October 2025 status conference that the current trial date is final. *See* Docket 107 at 11:37:45-11:42:00. At that conference, Richmond agreed that the most recent continuance motion would be the last the court would grant. *Id.* As the court explained then, this matter has been pending for nearly 15 months, during which time Richmond has had several attorneys appointed or retained to represent him. *Id.* Under these circumstances, the court finds no basis to further delay the proceedings or disturb the long-scheduled trial date. Thus, it is

ORDERED that defendant's motions for recusal (Dockets 132, 175, 176) are DENIED; it is

FURTHER ORDERED that defendant's motions to dismiss (Dockets 130, 132, 140, 150-52, 155, 167, 177-180, 187) are DENIED; it is

FURTHER ORDERED that defendant's motions to compel (Dockets 129, 145-49, 169, 187) are DENIED; it is

FURTHER ORDERED that defendant's motions to change venue (Dockets 153, 157) are DENIED; it is

FURTHER ORDERED that defendant's motions to unseal case (Dockets 132, 169) are DENIED as moot.

DATED February 3, 2026.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE